MEMORANDUM *
Oscar Larin-Delgado (“Larin”) petitions this Court for review of the Board of Immigration Appeals’ (“BIA”) dismissal of his appeal from a final order of removal. The BIA dismissed Larin’s appeal on the ground that he had waived his right to appeal in exchange for a grant of voluntary departure. Although he acknowledges having agreed to the waiver, Larin argues that the Board’s decision was nonetheless erroneous because his decision to waive his rights was not “considered and intelligent.” We agree with Larin and therefore grant his petition.
I. Exhaustion of Waiver Argument
This Court has jurisdiction to hear Larin’s appeal because the BIA expressly addressed the validity of Larin’s waiver in its final order, rather than declining to address Larin’s argument on procedural grounds. See Abebe v. Gonzales, 432 F.3d 1037, 1041 (9th Cir.2005) (en banc).
*726 I. Validity of Waiver
“For a waiver to be valid, the government must establish by ‘clear and convincing evidence’ that the waiver is ‘considered and intelligent.’ ” United States v. Pallares-Galan, 359 F.3d 1088, 1097 (9th Cir.2004) (internal citations omitted). A waiver is not “considered and intelligent” if, among other things, an IJ fails to explore an issue adequately with the petitioner, see id.; does not adequately advise the petitioner of the consequences of his choices, see id.; does not inform the petitioner about available relief, see United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.2000); or pressures a petitioner to drop a request for relief “before any significant exploration of all relevant facts ha[s] occurred,” see Cano-Merida v. I.N.S., 311 F.3d 960, 965 (9th Cir.2002). Where, as here, the petitioner appears pro se, the IJ’s duty “to fully develop the record” is heightened. See Agyeman v. I.N.S., 296 F.3d 871, 884 (9th Cir.2002).
We hold that Larin’s decision to waive his right to appeal was not “considered and intelligent” because he made that decision only (1) after having been informed by the IJ, prematurely and without proper investigation, that he was ineligible for adjustment of status, and (2) after being improperly pressured to accept voluntary departure, which required that he waive his appeal.
1. The IJ concluded that Larin was ineligible for adjustment of status because he was not the beneficiary of a visa petition that had been filed before April 30, 2001. See 8 U.S.C. § 1255(i); Acosta v. Gonzales, 439 F.3d 550, 553 (9th Cir. 2006) (listing eligibility requirements for penalty-fee adjustment of status). The IJ’s decision was based largely on the Department of Homeland Security’s (“DHS”) assertion (through a new attorney) at Larin’s final hearing that the record did not contain an approved 1-130 visa petition listing Larin as the beneficiary. This assertion contradicted the agency’s previous representations at one of Larin’s earlier hearings. The administrative record, however, contains several indications that an 1-130 visa petition had been filed on Larin’s behalf in the early 1990s, among them the assurances from DHS to Larin and the IJ that Larin’s file contained an approved 1-130 petition listing Larin as the beneficiary. The IJ should not have accepted DHS’s sudden reversal of position without further exploration, including, at a minimum, providing Larin with an opportunity to obtain a copy of an approved petition.
Moreover, the record also shows that DHS scheduled an adjustment of status interview for Larin in 1998 based on a previously filed adjustment of status application, although that application was later denied for “failure to prosecute.” An I-130 (or other) visa petition must be filed on an alien’s behalf before the alien may adjust status, see 8 U.S.C. § 1255. So it is unlikely that Larin would have been granted an interview without a petition having been filed on his behalf.[1] The fact that Larin’s previous adjustment of status application had been denied would not render a previously approved 1-130 petition invalid. See Agyeman, 296 F.3d at 875-76. The 1998 interview appointment therefore suggests that there was an approved 1-130 *727 petition, as DHS had previously represented.
In addition, under the regulations in effect in 1992, Larin, as the child of someone who was not a lawful permanent resident (“LPR”), could not have been the derivative beneficiary of a visa petition filed on behalf of his non-LPR mother by his mother’s U.S. citizen spouse. See 8 C.F.R. § 204.1 (1992); 8 C.F.R. § 204.2(a)(4) (current version); see also Ira J. Kurzban, Immigration Law Sourcebook, ch. 6, § III.D.5 (11th ed.2008). As Larin received an adjustment of status interview in 1998, it is likely that he was the beneficiary of a separate petition filed by his stepfather in 1992, as the governing regulations required.[2]
At oral argument, the government could not explain how Larin could have been scheduled for an adjustment interview in 1998 without an 1-130 visa petition that had been filed before April 30, 2001 on his behalf, rather than derivatively. We therefore hold that the IJ erred when he simply accepted DHS’s revised statement—that Larin’s file did not contain an approved 1-130—and did not develop the issue further or afford Larin the opportunity to produce the approval notice (which he had no reason to bring with him as DHS had previously conceded that it existed). The IJ’s denial of Larin’s adjustment of status application was premature, and Larin’s subsequent waiver of adjustment relief and of his right to appeal the IJ’s decisions was not considered and intelligent.
2. Larin also asserts that his waiver was not “considered and intelligent” because the IJ pressured him into accepting voluntary departure by misleading him as
to the consequences of that option, and failed to properly exploring Larin’s asylum claim.
The only benefit of voluntary departure that was cited by the IJ—i.e., that Larin would not be subject to the ten-year reentry bar that accompanies a removal order—would not, in fact, have benefited Larin. That is so because, even if Larin accepted voluntary departure and avoided the ten-year removal bar, he would nonetheless be subject to a ten-year bar for having been “unlawfully present in the United States for one year or more.” 8 U.S.C. § 1182(a)(9)(B)(i)(II). The government acknowledged this point at oral argument. The IJ’s advice to Larin regarding voluntary departure was therefore misleading, and prevented Larin from intelligently evaluating that option. See Pallares-Galan, 359 F.3d at 1097 (noting that a waiver is not valid where “aliens were not represented by legal counsel at the hearing and were not adequately advised of the consequences of the choices they were forced to make”). To make matters worse, the IJ refused Larin’s request for a continuance to evaluate the voluntary departure option, an option presented to Larin for the first time during his final hearing.
III. Prejudice
To receive a new hearing, Larin must show not only that his waiver was invalid, but also that he was prejudiced by the IJ’s misconduct. See Arrieta, 224 F.3d at 1079. Prejudice exists where an IJ fails to provide a petitioner with the opportunity to present evidence in support of a request for relief. See Cano-Merida, 311 F.3d at 965. By prematurely denying Larin’s adjustment of status application and *728 by improperly pressuring Larin to accept voluntary departure and therefore to waive appeal, the IJ denied Larin such an opportunity here. We therefore hold that Larin was prejudiced by the IJ’s actions.
PETITION GRANTED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The current form 1-485 (Adjustment of Status) instructions advise those seeking to adjust status to ”[a]ttach a copy of the approval notice for an immigrant petition that makes a visa number immediately available to you, or submit a complete relative ... petition that, if approved, will make a visa number immediately available to you.” See http://www.uscis. gov/files/form/i-485instr.pdf.

. The government’s argument that Larin was merely listed as a derivative beneficiary on a petition filed on behalf of his mother was, in any event, speculation, as the government did not produce that petition.